IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

KEITH R. BRIDGEWATER,                  No. 2:11-CV-1216-TLN-CMK-P

      Plaintiff,

  vs.                                                         FINDINGS AND RECOMMENDATIONS

DEBRA SWEENY,

      Defendant.

_____/

      Plaintiff, a prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983.  Pending before the court is defendant's motion for summary judgment (Doc. 24).

**I.  BACKGROUND**

**A.**    **Plaintiff's Allegations**

      This action proceed on the original complaint.  According to plaintiff, defendant Sweeny, who is a prison nurse, violated the prison's rules governing overtime work, thereby jeopardizing his and other inmates' health care.  In particular, plaintiff claims that defendant worked 48 hours "non-stop" between July 14th and 16th, 2010.  Plaintiff alleges that ". . .this greatly increase [sic]

1

the risk to plaintiff & other inmates. . ." of being issued the incorrect medications.

Plaintiff states that he filed an inmate grievance on July 16, 2010, asking that medications be kept "inside of the original protective container" until delivered to him, and that this grievance was granted. When plaintiff informed defendant Sweeny of this, ". . .she became very upset towards Plaintiff and stated that '. . .she runs her own program and the hell with that 602 appeal.'" Plaintiff states that, after that, he was "subjected to unsafe medical practices by L.V.N. Sweeny." Specifically, he claims that Sweeny threw his medications at him, resulting in pills "tossed to the ground." Plaintiff adds that, the next day, his pills were ground to a fine powder so as to be unidentifiable.

According to plaintiff, as soon as defendant Sweeny learned of plaintiff's grievance, she ". . .began to set in motion retaliatory actions against Plaintiff during medication pill line. . . ." In particular, plaintiff claims that Sweeny continued to grind his medication into powder, that she gave him smaller doses than required, and that she falsely accused plaintiff of disruptive behavior. Plaintiff claims that, during the course of a meeting with staff concerning his grievance, he was told that defendant Sweeny "is pissed off at Plaintiff. . ." and that he should be "very careful with L.V.N. Sweeny. . . ."

Plaintiff states that he went to the pill line on July 25, 2010 and, rather than speaking with Sweeny, he "simply wrote down the day, time, and which officers were present during said pill line." According to plaintiff, this "inflamed" Sweeney who ordered that plaintiff be returned to his cell. Twenty minutes later plaintiff was escorted from his cell in handcuffs because Sweeny had filed a rules violation report against plaintiff. Plaintiff was placed in administrative segregation and learned that Sweeny had charged him with "threatening her [Sweeny] in a physical manner." Following plaintiff's release from administrative segregation, the charges against him were dropped "in the interest of justice."

/ / /

/ / /

B. **Parties' Evidence**

According to defendant, the evidence in this case indicates that the following facts are undisputed:

1. In July 2010 plaintiff was prescribed methadone for back pain, with deliver by means of Direct Observation Therapy ("DOT"), meaning that the inmate is directly observed while swallowing the prescribed oral medication.

2. DOT is designed to prevent "cheeking" whereby inmates will hide medication in their mouths to later take all at once (to either get high or commit suicide) or to barter or sell.

3. Relevant medical protocols in place at the time required that oral narcotics be crushed to a power to ensure delivery and as a further safeguard against cheeking.

4. The regulations did not specify how fine medications were to be ground, though many nurses believed that the better practice to prevent cheeking was to grind medication to a fine powder.

5. In July 2010 Sweeny was instructed by her supervisors to crush medication into a powder and thereafter followed a six-step protocol for delivering crushed medication.

6. Medications must be crushed on the same day they are delivered and must be crushed by the same nurse who delivers it to the inmate.

7. Medication delivery to inmates can be very dangerous for nursing staff due to inmate-on-staff assaults as well as inmate-on-inmate assaults.

8. Plaintiff admits that his methadone was supposed to be crushed.

9. On July 16, 2010, plaintiff refused his medication from Sweeny because it had been crushed to a powder.

10. Plaintiff filed an inmate grievance (CDC-602, log no. SAC-10-10-1181) on July 16, 2010, regarding Sweeny's allegedly improper pill line practices.

11. On July 17, 2010, plaintiff initially refused his methadone because it was not in the original packet.

12. From July 22nd to July 24th, 2010, plaintiff refused his methadone medication because it was crushed to a powder.

13. Plaintiff began confronting Sweeny, demanding that this medications not be crushed and that they be administered in their original packaging.

3

14. Sweeny felt that plaintiff's actions during pill line were causing dangerous delays, thereby increasing the danger inherent in medication delivery to inmates.

15. Sweeny was aware that nurses and inmates had been assaulted during pill line.

16. Plaintiff confronted Sweeny on July 25, 2010, during the pill line.

17. Sweeny was frightened by plaintiff's conduct on July 25, 2010, because she believed plaintiff was threatening her.

18. That evening, Sweeny filed a rules violation report (CDC-115, log no. C10-07-075) because she felt that plaintiff had violated Title 15 of the California Code of Regulations, § 3013, which prohibits inmates from attempting to gain special consideration or favor by use of threat.

19. Plaintiff later filed a second inmate grievance against Sweeny (CDC-602, log no. SAC-10-10-12031) regarding the rules violation report, specifically claiming that the rules violation report had been issued in retaliation for plaintiff's having filed a prior inmate grievance against her on July 16, 2010.

20. At the time Sweeny filed the rules violation report, she had no knowledge of the earlier July 16, 2010, inmate grievance filed by plaintiff against her, nor was it protocol in processing such grievances to bring them to the attention of the involved staff member.

21. Sweeny learned of the July 16, 2010, inmate grievance for the first time on August 2, 2010, when she was interviewed by her supervisor in connection with plaintiff's grievance.

22. Plaintiff's inmate grievance was addressed at the final level of administrative review on July 25, 2011.

In addition to portions of his prison record, the relevant grievances and rules violation report, as well as various discovery responses, plaintiff attaches the declaration of inmate Thomas, who states that he has witnessed Sweeny become confrontational with inmates. Inmate Thomas offers no specific statements concerning plaintiff's contact with Sweeny. Plaintiff also presents the declaration of inmate Gregory Goods, who testifies that he had negative interactions with Sweeny. Again, inmate Goods offers no statements concerning plaintiff's involvement with Sweeny. Plaintiff offers the similar declaration of inmate Larry Wimberly. Plaintiff submits various Department of Corrections and Rehabilitation internal

4

memoranda regarding inmate grievances. In particular, the memoranda are directed to specific correctional officers and seek their informal responses to specific grievances. None of the submitted memoranda are addressed to defendant Sweeny. Instead, one is directed to "C/O Hazlewood" and concerns plaintiff's CDC-602, log no. C09-12-42. Another is directed to "C/O Van Meter" and concerns plaintiff's CDC-602, log no. C09-11-03. A third and final memorandum submitted by plaintiff is directed to "Litigation" and concerns plaintiff's CDC-602, log no. C09-11-33.

## II. STANDARDS FOR SUMMARY JUDGMENT

The Federal Rules of Civil Procedure provide for summary judgment or summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The standard for summary judgment and summary adjudication is the same. See Fed. R. Civ. P. 56(a), 56(c); see also Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Id., at 323 (quoting former Fed. R. Civ. P. 56(c)); see also Fed. R. Civ. P. 56(c)(1).

/ / /

/ / /

/ / /

5

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(c)(1); see also Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).  To demonstrate that an issue is genuine, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).  It is sufficient that "the claimed factual dispute be shown to require a trier of fact to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  See Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed, see Anderson, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party, see Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902

1  (9th Cir. 1987).  Ultimately, "[b]efore the evidence is left to the jury, there is a preliminary
2  question for the judge, not whether there is literally no evidence, but whether there is any upon
3  which a jury could properly proceed to find a verdict for the party producing it, upon whom the
4  onus of proof is imposed."  Anderson, 477 U.S. at 251.

### III.  DISCUSSION

In her motion for summary judgment, defendant Sweeny argues: (1) plaintiff cannot establish necessary elements of his claim that she retaliated against him;[1] (2) plaintiff has failed to exhaust administrative remedies; and (3) she is entitled to qualified immunity.

In order to state a claim under 42 U.S.C. § 1983 for retaliation, the prisoner must establish that he was retaliated against for exercising a constitutional right, and that the retaliatory action was not related to a legitimate penological purpose, such as preserving institutional security.  See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (per curiam). In meeting this standard, the prisoner must demonstrate a specific link between the alleged retaliation and the exercise of a constitutional right.  See Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995); Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989).  The prisoner must also show that the exercise of First Amendment rights was chilled, though not necessarily silenced, by the alleged retaliatory conduct.  See Resnick v. Hayes, 213 F.3d 443, 449 (9th Cir. 2000), see also Rhodes v. Robinson, 408 F.3d 559, 569 (9th Cir. 2005).  Thus, the prisoner plaintiff must establish the following in order to state a claim for retaliation: (1) prison officials

---

[1] The complaint does not present any other cognizable claims.  To the extent plaintiff asserts that his equal protection rights were violated, plaintiff has not stated a cognizable claim because he does not allege that he was treated differently that similarly situated inmates. To the extent plaintiff alleges that he was denied procedural due process, such a claim is belied by plaintiff's statements in the complaint that he received notice of disciplinary charges against him as well as a hearing on those charges.  In fact, plaintiff states that such process ended in his favor with the charges being dropped.  Thus, the only cognizable constitutional issue presented in this case is whether Sweeny issued the July 25, 2010, CDC-115 rules violation report in retaliation for plaintiff having filed the July 16, 2010, CDC-602 inmate grievance against her.

7

1 took adverse action against the inmate; (2) the adverse action was taken because the inmate
2 engaged in protected conduct; (3) the adverse action chilled the inmate's First Amendment
3 rights; and (4) the adverse action did not serve a legitimate penological purpose.  See Rhodes,
4 408 F.3d at 568.

5        In this case, the court agrees with defendant that plaintiff cannot establish that the
6 adverse action taken against him – issuance of the rules violation report on July 25, 2010 – was
7 taken because plaintiff engaged in protected activity – filing the inmate grievance on July 16,
8 2010.  Specifically, defendant has presented evidence that, at the time she issued the rules
9 violation report, she had no knowledge of the July 16, 2010, grievance.  According to
10 defendant's evidence, she first learned of the July 16, 2010, grievance on August 2, 2010, when
11 she was interviewed by her supervisor.  If Sweeny did not learn about the July 16, 2010,
12 grievance until after she issued the rules violation report on July 25, 2010, then she could not
13 have done the latter because of the former.

14        With respect to the issue of Sweeny's knowledge of the July 16, 2010, inmate
15 grievance, plaintiff argues:

> Defendant claims that L.V.N Sweeny was not aware that plaintiff filed a grievance against her [on July 16, 2010] holds no truth or merit and should be rejected accordingly.  Plaintiff's first appeal against L.V.N. Sweeny was filed on July 16th 2010 and that provided plenty of time and awareness to take retaliatory action against plaintiff a week later on the night of July 25th 2010 by falsifying a rules violation report.
> Therefore any reasonable person of common intelligence would conclude that Correctional Officers witnessing a problem instruct plaintiff to file a grievance against L.V.N. Sweeny, the person in which the problem is with (SWEENY) instruct plaintiff to file a grievance against her, and the person complaining directly informs Sweeny that he (PLAINTIFF) will indeed be filing a grievance, couple with the widely practice of distributing institutional memorandums to staff in advance as notice that appeal has been filed against that person . . . gives rise that Sweeny did have knowledge that plaintiff filed against her.

24 In essence, plaintiff claims that because Sweeny may have said words to the effect "Go ahead
25 and file a grievance against me" and because plaintiff may have responded with words to the
26 effect "Okay, I will," this gives rise to an inference that Sweeny had actual knowledge that

8

1  plaintiff did, in fact, later file an inmate grievance. Plaintiff claims this inference is strengthened
2  by the "practice" of distributing memoranda to staff which apparently indicate which inmates
3  have filed grievances against which staff members.
4        Plaintiff's argument is not persuasive. At best, plaintiff's logic leads to the
5  reasonable inference that plaintiff was planning on filing a grievance. There is nothing inherent
6  in the exchange plaintiff describes occurring between himself and Sweeny upon which to infer
7  that Sweeny had actual knowledge that plaintiff did, in fact, file a grievance. The court does not
8  find that plaintiff's evidence, in the form of three prison memoranda, creates a genuine dispute as
9  to this issue. Specifically, while the memoranda indicate that certain correctional officers were
10 made are of various grievances plaintiff had filed, none of the memoranda references either
11 Sweeny or the July 16, 2010, grievance.
12       Absent evidence that Sweeny knew of the July 16, 2010, grievance as of the time
13 she issued the rules violation report on July 25, 2010, plaintiff cannot prevail and summary
14 judgment in defendant's favor is appropriate.
15 / / /
16 / / /
17 / / /
18 / / /
19 / / /
20 / / /
21 / / /
22 / / /
23 / / /
24 / / /
25 / / /
26 / / /

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that defendant's motion for summary judgment (Doc. 24) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 28, 2013

                                                             _____
                                                             **CRAIG M. KELLISON**
                                                             UNITED STATES MAGISTRATE JUDGE